

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**COMPUTER ASSOCIATES
INTERNATIONAL, INC.**
    **Plaintiff**

    **v.**

**GENERAL COMPUTER
CORPORATION d/b/a GM GROUP,
INC., MULTIPLE COMPUTER
SERVICES, INC. d/b/a GM GROUP
PUERTO RICO**
    **Defendants**

**Civil No. 97-1021(PG)**

**Consolidated with:**

**Civil No. 97-1803(PG)**

---

## ORDER REGARDING COMPUTER ASSOCIATES' SUBPOENA
## AND GM GROUP'S REQUEST FOR PROTECTIVE ORDER

On September 6, 2001, defendant GM Group ("GM") filed an Emergency Motion

for Protective Order (**Docket No. 108**). GM seeks a court order to quash a deposition

duces tecum subpoena that was served by plaintiff Computer Associates ("CA") upon

Pricewaterhousecoopers LLP ("Pricewaterhouse"), a non-party, that has performed as

accountants for defendant GM. The subpoena purportedly demands "all audit reports

and other financial documents and all identifying or related work papers that support

the financial audit reports issued by Pricewaterhouse . . . for the years 1991 to the

present." In addition, CA demands the production of "all work papers and other

financial documents arising out of or relating to the valuation and sale of GM Group,

Inc."





Plaintiff CA filed an opposition to GM's motion to which GM has replied. (*See* **Docket No. 110 and 113**.)

The factual background to the parties' controversy, as gleaned from the parties' statements, appears to be the following.

On August 14, 2001, CA served a subpoena duces tecum on the custodian or records of Pricewaterhouse. When reminded by counsel for GM that the term had expired, the petition for production of documents was withdrawn.

On August 23, 2001, CA provided counsel for GM with notice of its intent to depose and subpoena. CA asserts that "the date [for the taking of the deposition, September 12, 2001] was cleared out with GM's counsel." No action was undertaken by GM until September 6, 2001, when the motion to quash the subpoena was filed. GM asserts that the deposition and subpoena commanding the production of documents should be quashed, inasmuch as:

1. The information sought by CA is privileged under the accountant/client privilege.

2. The request is untimely since it was presented three (3) years after CA had been placed on notice of the fact that GM did not have the requested documents under its control, inasmuch as it was not GM's property. (*See* Response No. 12 to Interrogatories dated December 30, 1999.)

3. The request is untimely inasmuch as the discovery request is submitted two (2) months after the discovery deadline had expired.

4. The discovery and production of documents requested is voluminous and places an undue burden upon Pricewaterhouse and demanding its production will further delay the trial date and a discovery process that has concluded but has been ongoing since 1997.

5. Although the request for production is made from Pricewaterhouse, it constitutes a Rule 34 request for production of documents that is untimely made.

6. "The deposition testimony sought is for the years 1991 [including FY 1990] through 1997 [while] the documents demanded stretch from 1991 through 2001."

Based on the record, the due date for the taking of depositions was September 28, 2001 (**Docket No. 100**). The deadline for service of written discovery, propounded by or between the parties, their experts and from any third parties was May 31, 2001 (**Docket Nos. 97 and 100**).

CA opposes GM's request for quashing of the subpoena arguing:

1. The information sought is not privileged, inasmuch as GM has placed at issue its profits and, as such, its financial statements are extremely relevant to the controversy.

2. GM lacks standing to challenge the subpoena as burdensome and harsh when the information is not in its possession but rather in that of a third party.

3. Deposition discovery may be had until September 28, 2001.

GM concedes it does not oppose the scheduling and taking of the deposition(s) of its accountants; however, GM opposes further and delayed requests for production of documents.

At the onset we dispose of three of the parties's arguments. First, inasmuch as GM's profits during the years 1990 through 1997 is at issue and having GM provided disclosure of its audit reports for the relevant years, the information sought by means of a subpoena from Pricewaterhouse is not deemed privileged. Second, even if rightfully presented, CA's request for disclosure of all documents and information supporting GM's audit reports may not exceed the 1990 through 1997 period. Third, given the case management order and September 28, 2001 deadline for the taking of depositions, CA may proceed to depose GM's accountants or the custodian of GM's records within the possession and/or control of Pricewaterhouse.

Crucial to the issue at hand remains the contents of the scheduling order setting the discovery deadlines, its scope and the determination on whether CA is entitled to the production of documents sought either under general discovery rules, Fed.R.Civ.P., Rules 30(b)(6) and 34.

It remains undisputed that discovery has been on-going since 1997, when the case at bar was filed. On or about 1999 CA obtained from GM its audit report for the years 1990 through 1997. It appears that GM was then requested to produce "all auditor reports, working papers and supporting documentation prepared by or for GM from 1990 through 1997."

On December 30, 1999, GM responded to CA's request asserting that the documents requested (those in support of the audit reports or financial statements already disclosed) were not "GM Group's property" and it did not have the working papers and supporting documents used by its auditors in preparation for their reports. It is not until September 2001 when CA elects to request said production of documents from Pricewaterhouse. No good cause is proffered for such a delay.

While CA classifies the instant demand for production of documents as "deposition discovery" and implies it is timely filed within the deposition time frame, nonetheless it remains a fact that the discovery requested is voluminous. Presumably, it is also highly complex and technical and that, while obtaining its disclosure during the deposition, its perusal and analysis will entail hours of hard work by CA financial advisors and experts. This will logically preclude the use of said information or evidence at the deposition but would enable CA to obtain disclosure of documents it neglected to obtain or request since late 1999.

The record shows that the discovery schedule originally provided for a February 28, 2001 deadline "for conclusion of all written discovery propounded or between the parties, their experts and from any third parties, and responses to outstanding discovery requests." All depositions were to be concluded by May 31, 2001 (**Docket No. 81**). These deadlines, by stipulation of the parties, which was approved by the Court on May 15, 2001, was extended to May 31, 2001, and August 31, 2001 (**Docket No. 96 and 97**, respectively). On June 29, 2001, the parties submitted an

additional stipulation and request to extend the time to identify, submit reports and depose expert witnesses and rebuttal expert witnesses. At the time it was made clear that said extensions were "not to alter the pretrial date ordered by the Court or the discovery deadlines [that had] expired in previous scheduling orders." Further, a showing of good cause was necessary prior to any other request for modification of extension of the discovery deadlines (**Docket No. 100**).

It is clear from the record that while CA is still on time to depose personnel from Pricewaterhouse with information relevant to the case, it is not entitled to reopen at this stage of the proceedings the discovery process. As correctly argued by GM, CA has known since December 1999 that all supporting documents for GM's audit or financial reports were within the control and custody of Pricewaterhouse. No reason and much less good reason has been shown for not having requested said documents before. The request is also presented almost three (3) months after expiration of the discovery deadline and said deadline was clearly extensive to demands for production of documents made to either the parties or third parties.

No justification having been offered for such a delayed request for production of documents, the request for issuance of protective order and to quash the subpoena is **GRANTED (Docket No. 108)**. CA's opposition is **DENIED (Docket No. 110)**. GM's reply to CA's opposition is **NOTED (Docket No. 113)**.

It is essential that a court's deadlines be followed in order to allow for the proper management of the court's caseload. *Torres-Ríos v. LPS Laboratories, Inc.*, 152 F.3d 11,

15-16 (1st Cir. 1998) (Court property denied motion to amend complaint filed ten months after the court's deadline for doing so had passed); *Rosario-Díaz v. González*, 140 F.3d 312, 315-16 (1st Cir. 1998) (Court refused to consider motion for summary judgment filed eight weeks after scheduling order's deadline); *Serrano-Pérez v. FMC Corp.*, 985 F.2d 625, 628 (1st Cir. 1993); *Thibeault v. Square D Co.,*, 960 F.2d 239, 247 n.7 (1st Cir. 1992) ("we heartily endorse the utilization of discovery closure dates . . . as a case management tool"); *Riofrio Anda v. Ralston Purina Co.*, 959 F.2d 1149, 1154-55 (1st Cir. 1992) (denial of motion to amend complaint because plaintiff moved to amend the complaint two months after deadline in the scheduling order had passed); *Barreto v. Citibank, N.C.*, 907 F.2d 15, 16 (1st Cir. 1990) ("discovery orders, other pretrial orders and, indeed, all orders governing the management of a case are enforceable under pain of sanction for unjustifiable violation"); *Mendez v. Banco Popular de Puerto Rico*, 900 F.2d 4, 7 (1st Cir. 1990) ("a district judge must often be firm in managing crowded dockets and demanding adherence to announced deadlines").

**SO ORDERED.**

At San Juan, Puerto Rico, this 17th day of September, 2002.

**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**